## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**KIM L. CARTER,**
**12115 Castlewall Court**
**Bowie, Maryland 20720,**

    **Plaintiff,**

    **v.**

                        **Civil No:_____**

**ROBERT M. LIGHTFOOT, JR., Acting**
**Administrator, NATIONAL AERONAUTICS**
**AND SPACE ADMINISTRATION,**
**NASA Headquarters**
**300 E Street, S.W.**
**Washington, D.C. 20546-0001,**

**SERVE:**
**Robert M. Lightfoot, Jr.**
**Acting Administrator**
**300 E Street, S.W.**
**Washington, D.C. 20546-0001,**

    **Defendant.**

## COMPLAINT

    **NOW COMES** Plaintiff, Kim L. Carter, by and through her undersigned counsel, and, pursuant to Fed. R. Civ. P. 8 and 10, files this Complaint for damages. Plaintiff states herein as follows:

### JURISDICTION AND VENUE

1.    This action is authorized and instituted pursuant to the Rehabilitation Act of 1973 ("VRA or Rehabilitation Act"), 29 U.S.C. § 794**,** Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2 and 2000e-3, and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 623. As this Complaint asserts claims arising under the laws of the United States, this Court has original jurisdiction over those claims.

2.      The claims described in this Complaint occurred within this judicial district and venue properly lies in this judicial district.  Defendant is a government employer who is subject to the jurisdiction of this Court.

## PARTIES

3.      Plaintiff Kim L. Carter, date of birth August 29, 1957, is an African American female citizen of the United States of America and resides in the State of Maryland.

4.      Plaintiff is an employee protected by ADEA, the Rehabilitation Act and Title VII.

5.      Defendant Robert M. Lightfoot, Jr. is the Acting Administrator of the National Aeronautics and Space Administration ("NASA" or "Administration") and the designated representative of NASA.

## ADMINISTRATIVE PROCEDURES

6.      In December 2015, Plaintiff initiated the EEO process by making an informal complaint of discrimination to the Administration's Office of Diversity and Equal Opportunity.  On or about March 29, 2016, Plaintiff timely initiated her formal complaint of discrimination against Defendant with the Administration's Office of Diversity and Equal Opportunity.  Plaintiff's complaint of discrimination alleged that she was discriminated against on the basis of her race, color, gender, national origin disability and, in retaliation because of prior protected activity.

7.      On January 12, 2016, the undersigned counsel notified Defendant that he represented Plaintiff and apprised Defendant of her discrimination and retaliation claims.

8.      Plaintiff subsequently amended that formal complaint of discrimination to include additional incidents of discrimination and retaliation.

9.      Defendant investigated the claims in the initial complaint of discrimination and has begun investigating the claims in the amended complaint.  To date, it has not completed that investigation and has not issued a final agency decision on the complaint of discrimination.

10.     More than 180 days have elapsed from the date of filing of the initial complaint of discrimination and this Court has jurisdiction over the claims asserted in this Complaint. 42 U.S.C. § 2000e-16(c).

11.     All of Plaintiff's claims alleged in this Complaint were considered during the administrative investigation and they reasonably followed from the allegations contained in the administrative complaint of discrimination and retaliation.

12.     Plaintiff therefore invokes her right to bring this civil action in that she has satisfied all administrative and judicial prerequisites to the institution of this action.

## FACTS COMMON TO ALL COUNTS

13. Since 2004, Plaintiff has suffered from several physical medical conditions: long-standing hypertension (November 2005), stress-related vertigo (May 2004), coronary artery disease (May 2015) and complex migraines (May 2004).  Those medical conditions affect multiple physical and mental activities, including working, breathing, talking, standing, thinking, communicating and talking.

14. Plaintiff has informed the Administration and her managers about her medical conditions.

15. Despite those disabilities, Plaintiff always has been able to perform the essential functions of her position, with or without reasonable accommodation.

16. On October 23, 2015 and November 7, 2016, Plaintiff submitted requests for reasonable accommodation.  Plaintiff's first request for reasonable accommodation was denied and her second request for reasonable accommodation was ignored by the Administration.

17. Plaintiff worked at NASA from November 1977, until March 3, 2017.  During that tenure, Plaintiff received several promotions.  From March 2000 to December 2002, Plaintiff worked as a GS-11 program analyst in NASA's Budget Operations Office and performed various budget operations duties.

18. In 1991, Plaintiff received a bachelor's degree, with a triple major in Accounting, Business Administration and Financial Management. In 1994, Plaintiff received a master's degree in Financial Management, with a minor concentration in Accounting.

19. In December 2002, Plaintiff was promoted to a GS-12 position as a program specialist in NASA's Office of International and Interagency Relations ("OIIR"), Resources Management Division ("RMD"). During her OIIR tenure, Plaintiff had four (4) immediate supervisors. Her last immediate supervisor during her tenure in RMD was Devon Fleming (African American, lighter skin coloration, date of birth approximately 1966). At all times relevant to this Complaint, Plaintiff was the only financial lead and resources analyst for RMD. For seventeen (17) years, Plaintiff provided those services without backup. Plaintiff was the only person providing these services Agency-wide. She was an expert in budget and financial systems for RMD and OIIR. Plaintiff's skill set was unique within the RMD and Agency-wide. Ms. Fleming did not possess Plaintiff's skills, training and experience in financial and budgeting matters. Plaintiff's work product regularly was reviewed, approved and even arrogated as her own work by Ms. Fleming. At all times prior to 2015, Plaintiff was rated at least as a successful performer.

20. Because Plaintiff had worked at a level commensurate with a GS-13 compensation level, Plaintiff, for several years, had requested a desk audit of her job classification. In 2015, NASA commenced an internal desk audit and job classification appeal.

21. After Plaintiff requested the desk audit and filed her internal job classification appeal, Ms. Fleming became abusive toward Plaintiff, screaming at her on multiple occasions, including on March 29 and May 3, 2015.

22. Plaintiff participated in the internal desk audit and the internal job classification appeal, but her statements and supporting evidence were ignored by Defendant. Documents submitted by

Plaintiff accurately reflected the GS-13 level work actually being performed by Plaintiff, not by Ms. Fleming.

23. In October 2015, following a tag-up meeting, Ms. Fleming accosted Plaintiff about the internal desk audit results.  She taunted and berated Plaintiff about those results.

24. Ms. Fleming's verbal assault adversely affected Plaintiff's heart condition and, following that meeting, she immediately went to Defendant's health unit to be evaluated.  Subsequently, Plaintiff was admitted to the hospital and underwent a heart catheterization.  Plaintiff was hospitalized for five (5) days for that heart condition.  Plaintiff's supervisors were aware of that hospitalization and that it was heart-related.

25. On October 23, 2015, Plaintiff submitted a Request for Reasonable Accommodation form, in which she described her debilitating medical conditions, including hypertension, stress-related vertigo, coronary artery disease and complex migraines.  She requested transfer to another office, telework and placement on paid administrative leave.

26. On October 21. 2015, Plaintiff submitted a complaint of harassment under NASA's anti-harassment policy.  In that harassment complaint, Plaintiff contended that she had been subjected to unlawful harassment by Ms. Fleming and another NASA manager, Mr. Al Condes.  Even though Mr. Condes was named as one of the harassers, he was assigned to investigate the harassment complaint.  In filing that harassment complaint, Plaintiff was opposing practices that are unlawful under Title VII, the ADEA and the VRA.  By filing her anti-harassment complaint, Plaintiff was participating in protected EEO activities.

27. After Plaintiff submitted her harassment complaint and Request for Reasonable Accommodation form, Ms. Fleming increased her ridicule and harassment of Plaintiff, culminating in a series of bitter verbal assaults between November 27 and 30, 2015, in which she screamed incessantly at Plaintiff.  That harassment was based on Plaintiff's disability, race,

color, age and gender, as well as her having submitted her Request for Reasonable Accommodation form and anti-harassment complaint.

28. On November 26, 2015, Plaintiff reminded Ms. Fleming that, contrary to NASA's policies and procedures, Ms. Fleming had not issued her a Mid-Point Progress Review.

29. On November 30, 2015, Ms. Fleming met with Plaintiff to deliver her Mid-Point Progress Review. Contrary to prior performance appraisals, that occurred before Plaintiff submitted her request for a desk audit and a job classification appeal and before Plaintiff had filed her harassment complaint and Request for Reasonable Accommodation form, Ms. Fleming sharply criticized Plaintiff's job performance. Such criticism was not justified since Plaintiff had been delivering at least a successful level of performance consistent with her performance planning documents. During that Mid-Point Progress Review, Ms. Fleming also added additional duties and responsibilities to Plaintiff's job requirements. Those additional duties neither were reasonable nor achievable.

30. On December 21, 2015, Plaintiff contacted one of Defendant's EEO counselors and initiated an informal EEO complaint of discrimination. Ms. Fleming received notice of that informal complaint.

31. In 2016, Ms. Fleming continued her discriminatory conduct toward and harassment of Plaintiff.

32. On January 5, 2016, Ms. Fleming issued Plaintiff a performance counseling letter, warning Plaintiff about alleged performance deficiencies.

33. On January 5, 2016, Ms. Fleming issued a denial of Plaintiff's request for reasonable accommodation. Prior to the issuance of that denial, Ms. Fleming never discussed Plaintiff's reasonable accommodation request with Plaintiff.

34. On January 7, 2016, Mr. Condes, one of the named harassers in Plaintiff's October 2015 harassment complaint, notified Plaintiff that he wanted to meet with her as part of the investigation into Plaintiff's October 2015 anti-harassment complaint.

35. On March 29, 2016, Plaintiff filed her formal complaint of discrimination with NASA's Office of Diversity and Equal Opportunity.  In that formal complaint of discrimination, Plaintiff alleged that unlawful discrimination and a hostile work environment because of her race, color, gender, disability, age and sexual stereotyping.  Plaintiff further alleged unlawful retaliation and a retaliatory hostile work environment.  Ms. Fleming received notice of that complaint of discrimination.

36. Under NASA's performance appraisal system, in 2016, the performance cycle ran from May 1, 2015 – April 30, 2016.  On April 14, 2016, Ms. Fleming invited her RMD direct reports, including Plaintiff, to submit a report on their accomplishments during the performance cycle. Plaintiff submitted her report on May 12, 2017.

37. According to NASA's performance appraisal system, rating officials were expected to hold face-to-face rating discussions with their direct reports and proposed ratings were to be completed by May 20, 2016.  Ms. Fleming never conducted a rating discussion with Plaintiff regarding her rating for the 2016 performance cycle.  Contrary to NASA's performance appraisal system, Ms. Fleming ignored Plaintiff's detailed weekly progress reports that Plaintiff submitted during weekly tag-up meetings with Ms. Fleming.  Those progress reports documented and described in detail Plaintiff's weekly work accomplishments and actions.

38. On May 27 and 31, 2016, Plaintiff received notification that her performance planning document for the 2017 performance cycle (May 1, 2016 – April 30, 2017) was available for her review.  Contrary to the language of NASA's performance appraisal system, Ms. Fleming never discussed that performance planning document with Plaintiff.

39. On June 30, 2016, nearly two months following the close of the 2016 performance cycle, Plaintiff received an electronic notification that her performance appraisal for the 2016 performance cycle was available for review and signing. Plaintiff received that notification in mid-afternoon and was expected to review and sign the appraisal that day. Because Plaintiff did not have sufficient time to review that appraisal, she did not sign it.

40. In that performance appraisal, Ms. Fleming sharply criticized Plaintiff's job performance. The deficiencies identified in that final performance appraisal for the 2016 performance cycle were not described in Plaintiff's Mid-Point Progress Review and had not been discussed previously with Plaintiff during the 2016 performance cycle. In addition to the final performance appraisal, Ms. Fleming delivered Plaintiff's performance planning document for the 2017 performance cycle (May 1, 2016 – April 30, 2017). In that performance planning document, Ms. Fleming added additional substantial new duties beyond those that were included in Plaintiff's performance planning documents for the 2016 performance cycle (May 1, 2015 – April 30, 2016) and those added to Plaintiff's duties late in 2015 and early 2016.

41. In delivering the final performance appraisal for the 2016 performance cycle and the 2017 performance planning document, Ms. Fleming ignored NASA's policies and procedures, including failing to meet with Plaintiff prior to finalizing the final performance appraisal for the 2016 performance cycle and the performance planning document for the 2017 performance cycle. Ms. Fleming further ignored Defendant's policies and procedures by not considering Plaintiff's accomplishments during the 2016 performance cycle and materials submitted by Plaintiff relating to the performance planning document for the 2017 performance cycle.

42. During 2016, Defendant commenced and continued an investigation into Plaintiff's complaint of discrimination and retaliation, including taking statements from Plaintiff. Plaintiff's statements were shared with NASA managers, including Mr. Condes and Ms. Fleming.

43. In Spring 2016, following completion of NASA's review of Plaintiff's internal job classification appeal, Plaintiff appealed that determination to the Office of Personnel Management ("OPM"). OPM investigated that job classification appeal. On July 11, 2016, NASA responded to Plaintiff's job classification appeal to OPM. Plaintiff, on July 27, 2016, submitted her rebuttal to NASA's response to OPM.

44. Subsequent to June 2016, and during the pendency of NASA's investigation of Plaintiff's complaint of discrimination and the OPM job classification appeal, Ms. Fleming's discriminatory, retaliatory and harassing conduct toward Plaintiff intensified in severity and frequency. That conduct interfered with Plaintiff's ability to perform her job and adversely affected Plaintiff's disabilities.

45. Ms. Fleming's discriminatory, retaliatory and harassing conduct toward Plaintiff became so intense and destructive of Plaintiff's health and her ability to perform her job that, on November 7, 2016, Plaintiff submitted her second Request for Reasonable Accommodation form. That form, attached to an e-mail, was submitted directly to NASA's Administrator. That e-mail described Ms. Fleming's discriminatory, retaliatory and harassment campaign and requested a relocation until her OPM job classification appeal and EEO complaint were resolved. Plaintiff spoke to NASA's then-administrator, Charles Bolden, about the facts contained in the second Request for Reasonable Accommodation form and described the abusive work environment in OIIR and the discrimination and retaliation that she was enduring.

46. No NASA representative ever discussed Plaintiff's second Request for Reasonable Accommodation form with her, although NASA's Office of Diversity and Equal Opportunity contacted Plaintiff and informed her that the second Request for Reasonable Accommodation form was being accepted as a formal request for reasonable accommodation. The

Administrator never responded to the second Request for Reasonable Accommodation form. After Plaintiff submitted her second Request for Reasonable Accommodation form, Ms. Fleming's discriminatory, retaliatory and harassing conduct toward Plaintiff escalated even more dramatically.

47. On November 26, 2016, Plaintiff submitted her Self-Assessment for the Mid-Point Progress Review for the 2017 performance cycle. In that Self-Assessment, Plaintiff described her accomplishments during the first half of the 2017 performance cycle.

48. On November 30, 2017, Ms. Fleming met with Plaintiff to discuss the Mid-Point Progress Review. At that meeting, Plaintiff objected that she was being held to performance standards that were not enumerated in her 2017 performance planning document and that additional duties had been added to her job responsibilities.

49. Subsequent to the Mid-Point Progress Review, Ms. Fleming added more duties to Plaintiff's job responsibilities. The Mid-Point Progress Review document was uploaded to NASA's online performance appraisal records system on December 7, 2016 for Plaintiff's signature and approval.

50. On January 31, 2017, after Plaintiff complained to Mr. Bolden about the toxic discriminatory and retaliatory environment in RMD, Ms. Fleming issued the final Mid-Point Progress Review document to Plaintiff. Contrary to NASA's policies and procedures, Ms. Fleming did not discuss that final Mid-Point Progress Review document with Plaintiff before it was delivered to Plaintiff. In that final Mid-Point Progress Review document, Ms. Fleming rated Plaintiff as "Level 1 – Fails to Meet Expectations" in Critical Element 1. Prior to issuing that final Mid-Point Progress Review document, Ms. Fleming had not discussed with Plaintiff any alleged performance deficiencies in Critical Element 1.

51. On January 31, 2017, Ms. Fleming issued Plaintiff an "Initial Decision to Withhold Within-Grade Increase ("WIGI Denial").  Plaintiff responded to that WIGI Denial on February 27, 2017.  That action resulted in Plaintiff not receiving a scheduled pay increase.

52. On February 7, 2017, Ms. Fleming issued a "Notice of Unacceptable Performance and Placement on Performance Improvement Plan – 90 Calendar Days" ("Notice of PIP").  That Notice of PIP again increased substantially the duties required to be performed by Plaintiff from those that were described in the 2017 performance planning document and that had been added by Ms. Fleming in the Mid-Point Progress Review.  That action directly threatened Plaintiff's continued service with the federal government.

53. The additional duties foisted on Plaintiff subsequent to November 2015 neither were reasonable nor achievable and interfered with Plaintiff's ability effectively to perform her job.

54. In 2017, Ms. Fleming's discriminatory, retaliatory and harassing actions toward Plaintiff continued unabated.  No response was received to Plaintiff's second request for reasonable accommodation made directly to the Administrator.  The working conditions remained intolerable and adversely were affecting Plaintiff's health.  Those working conditions were so intolerable that a reasonable person would have been compelled to resign.

55. On February 15, 2017, Plaintiff submitted her retirement papers.  That decision was involuntary and was based on the unlawful practices perpetrated by Ms. Fleming.  Plaintiff retired from federal service on March 3, 2017.  Plaintiff was constructively discharged from her position in the RMD.  Because of that constructive discharge, Plaintiff was required to relinquish her OPM job classification appeal, a claim that had considerable value since reclassification of her position to its true value under the OPM classification system, that of a GS-14, would result in substantial future compensation.

56. During the period 2015 – 2017, Ms. Fleming directly supervised another GS-12 Program Specialist, Ms. Patricia Shephard (African American, lighter complexion, no disabilities, no protected activities).  Unlike Plaintiff, Ms. Shephard does not have a history of engaging in activities protected under the VRA, Title VII and the ADEA.  Ms. Fleming has not manipulated Ms. Shephard performance planning documents and has not foisted additional duties on Ms. Shephard that neither are reasonable nor achievable.  Nor has Ms. Fleming subjected Ms. Shephard to a vicious campaign of discrimination, retaliation and harassment.  Ms. Shephard has not been issued a WIGI denial and a PIP.

57. At all times relevant to this Complaint, the harassment to which Plaintiff was subjected was unwelcomed by Plaintiff.

58. The harassment to which Plaintiff was subjected occurred because of Plaintiff's disabilities, her age, race (color), gender and in retaliation for Plaintiff having engaged in activities protected under the VRA, Title VII and the ADEA.

59. The harassment to which Plaintiff was subjected affected terms, conditions and privileges of employment, substantially interfered with Plaintiff's ability to perform her job and adversely affected Plaintiff's health.

60. Defendant knew or should have known of the harassment to which Plaintiff was subjected and failed to prevent it and took no effective remedial action.

61. As a result of the above-stated actions, Plaintiff has suffered economic damages, including, but not limited to, lost wages and benefits, proper classification of her job, denial of promotion or advancement opportunities, loss of status and prestige, severe emotional distress, humiliation and embarrassment, medical expenses, attorney's fees and costs associated with this lawsuit.

## COUNT I

## VIOLATION OF § 504 OF THE VRA – FAILURE TO MAKE REASONABLE ACCOMMODATIONS

62. Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 61 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

63. At all times relevant to this Complaint, Plaintiff was a "qualified individual with a disability." Plaintiff was fully able to perform the essential functions of her job.

64. Defendant was required, but failed, to implement reasonable and effective accommodations for her disabilities.

65. Plaintiff repeatedly requested reasonable accommodations including telework, transfers or office relocations away from the abusive, discriminatory and retaliatory work environment in OIIR.

66. Plaintiff's requests for reasonable accommodation were ignored or rejected without any discussion with Plaintiff.

67. Defendant denied Plaintiff's requests to telework, even though Plaintiff successfully can perform her job responsibilities remotely.

68. Non-disabled employees in Plaintiff's work area, including Patricia Shephard, have been granted accommodations in their work schedules and telework practices that Plaintiff was denied.

69. Plaintiff was denied reasonable accommodations and was treated disparately in compensation, application of performance standards and removal from federal service as a result of her disability. Defendant is required to take an affirmative action to hire and advance in employment qualified individuals with disabilities, such as Plaintiff.

70. Similarly situated non-disabled employees, such as Patricia Shephard, have been treated more favorably than Plaintiff.

71. Plaintiff's requests for accommodations did not impose an undue hardship upon Defendant.

72. The discriminatory actions described above taken by Defendant were taken solely by reason of Plaintiff's disability and Defendant's explanations for its actions are pretextual.

73. Defendant's actions violated § 504 of the Vocational Rehabilitation Act of 1973, 29 U.S.C. § 794(a).

74. As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney' fees and costs related to this litigation.

## COUNT II

## UNLAWFUL RETALIATION IN VIOLATION OF THE VRA

75. Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 74 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

76. Plaintiff began engaging in protected activities under the VRA, beginning on October 21, 2015, when she initially opposed unlawful employment practices by filing her internal complaint of harassment under Defendant's anti-harassment policy.  In November 2015, Plaintiff submitted her first Request for Reasonable Accommodation form.  Plaintiff continued those protected activities in December 2015, when she initiated her informal complaint by contacting an EEO counselor and, in March 2016, when Plaintiff filed her formal administrative complaint of discrimination.  That complaint of discrimination was amended in Spring 2017.  In November 2016, Plaintiff filed her second Request for Reasonable Accommodation form.

14

77. Plaintiff has suffered retaliation including, but not limited to, denying her requests for reasonable accommodation, subjecting her to a hostile work environment because of her race/color, imposing unreasonable and unachievable performance standards, counseling her for non-existent performance problems, denying her a within-grade increase, issuing her an "unsuccessful" performance appraisal and placing her on a performance improvement plan.

78. Defendant took materially adverse actions against Plaintiff for her engaging in protected activities.  Such actions would dissuade a reasonable worker from engaging in activities protected by the VRA, including opposing unlawful employment practices and participating in protected EEO activities.

79. There is a strong causal connection between Plaintiff's protected EEO activities and her repeated requests for reasonable accommodation and the adverse actions taken against her.

80. But-for Plaintiff's protected activities, Defendant would not have taken the adverse actions described above.

81. Defendant's explanations for its actions are pretextual.

82. Defendant retaliated against Plaintiff in violation of the Vocational Rehabilitation Act of 1973.

83. As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

## COUNT III

## UNLAWFUL HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE VRA

84. Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 83 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

85. After Plaintiff opposed unlawful employment practices, beginning in October 2015, Ms. Fleming and Mr. Condes began and continued unabated a pattern of unwelcome harassment, intimidation and ridicule directed at Plaintiff because of her having opposed unlawful employment practices under the VRA and for participating in protected EEO activities.

86. Such harassment, intimidation and ridicule created a workplace that was permeated with retaliatory intimidation, ridicule and insult that was sufficiently severe and pervasive to alter Plaintiff's conditions of employment and created an abusive retaliatory working environment.

87. Ms. Fleming's and Mr. Condes' retaliatory conduct unreasonably interfered with Plaintiff's work performance.  Their actions were both objectively and subjectively offensive.

88. Defendant's actions affected the terms, conditions and privileges of Plaintiff's employment.

89. Defendant knew or should have known of Ms. Fleming's and Mr. Condes' actions and failed to act to prevent or remediate their unlawful retaliatory harassment.

90.  As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

## COUNT IV

## UNLAWFUL DISCRIMINATION IN VIOLATION OF § 504 OF THE VRA

91. Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 90 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

92. At all times relevant to this Complaint, Plaintiff was a qualified person with a disability, able to perform the essential functions of her job with or without reasonable accommodation.

93. Between November 2015 and March 3, 2017, Ms. Fleming took a series of discriminatory adverse actions toward Plaintiff because of her disability, including, but not limited to, denying

her requests for reasonable accommodation, subjecting her to a hostile work environment because of her disabilities, imposing unreasonable and unachievable performance standards, counseling her for non-existent performance problems, denying her a within-grade increase, issuing her an "unsuccessful" performance appraisal and placing her on a performance improvement plan.

94. Plaintiff suffered the unlawful adverse actions described above.

95. Plaintiff's disability was the determining factor in the adverse actions described above.

96. The explanations offered by Defendant for its actions are pretextual.

97. Defendant's actions were unlawful and in violation of § 504 of the Vocational Rehabilitation Act of 1973, 29 U.S.C. § 794(a).

98. As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

## COUNT V

## UNLAWFUL DISCRIMINATION IN VIOLATION OF § 703 OF TITLE VII

99. Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 98 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

100.    Plaintiff is an African American with a dark complexion.  Ms. Fleming also is African American, but with a substantially lighter complexion.

101.    Between November 2015 and March 3, 2017, Ms. Fleming took a series of discriminatory adverse actions toward Plaintiff because of her race/color, including, but not limited to, denying her requests for reasonable accommodation, subjecting her to a hostile work environment because of her race/color, imposing unreasonable and unachievable performance

standards, counseling her for non-existent performance problems, denying her a within-grade increase, issuing her an "unsuccessful" performance appraisal and placing her on a performance improvement plan.

102.   Plaintiff suffered the unlawful adverse actions described above.

103.   Plaintiff's disability was a determining factor in the adverse actions described above.

104.   The explanations offered by Defendant for its actions are pretextual.

105.   Defendant's actions were unlawful and in violation of § 703 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a).

106.   As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

## COUNT VI

## UNLAWFUL RETALIATION IN VIOLATION OF § 704 OF TITLE VII

107.   Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 106 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

108.   Plaintiff began engaging in protected activities under Title VII beginning on October 21, 2015, when she initially opposed unlawful employment practices by filing her internal complaint of harassment under Defendant's anti-harassment policy.   In November 2015, Plaintiff submitted her first Request for Reasonable Accommodation form.   Plaintiff continued those protected activities in December 2015, when she initiated her informal complaint by contacting an EEO counselor and, in March 2016, when Plaintiff filed her formal administrative complaint of discrimination.   That complaint of discrimination was amended in

Spring 2017.   In November 2016, Plaintiff filed her second Request for Reasonable Accommodation form.

109.   Plaintiff has suffered retaliation including, but not limited to, denying her requests for reasonable accommodation, subjecting her to a hostile work environment because of her race/color, imposing unreasonable and unachievable performance standards, counseling her for non-existent performance problems, denying her a within-grade increase, issuing her an "unsuccessful" performance appraisal and placing her on a performance improvement plan.

110.   Defendant has taken materially adverse actions against Plaintiff for her engaging in protected activities, including opposing unlawful employment practices and participating in protected EEO activities.   Such actions would dissuade a reasonable worker from opposing such practices.

111.   There is a strong causal connection between Plaintiff's activities protected under Title VII and the materially adverse actions taken against her.

112.   But-for Plaintiff's protected activities, Defendant would not have taken the adverse actions described above.

113.   Defendant's explanations for its actions are pretextual.

114.   Defendant retaliated against Plaintiff in violation of § 704 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3.

115.   As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

## COUNT VII

## UNLAWFUL HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII

116.   Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 115 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

117.   After Plaintiff opposed unlawful employment practices, beginning in October 2015, Ms. Fleming and Mr. Condes began and continued unabated a pattern of unwelcome harassment, intimidation and ridicule directed at Plaintiff because of her having opposed unlawful employment practices under Title VII and for participating in protected EEO activities.

118.   Such harassment, intimidation and ridicule created a workplace that was permeated with retaliatory intimidation, ridicule and insult that was sufficiently severe and pervasive to alter Plaintiff's conditions of employment and created an abusive retaliatory working environment.

119.   Ms. Fleming's and Mr. Condes' retaliatory conduct unreasonably interfered with Plaintiff's work performance.  Their actions were both objectively and subjectively offensive, such that a reasonable person, as well as Plaintiff, would perceive to be so.

120.   Defendant's actions affected the terms, conditions and privileges of Plaintiff's employment.

121.   Defendant knew or should have known of Ms. Fleming's and Mr. Condes' actions and failed to act to prevent or remediate their unlawful retaliatory harassment.

122.    As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

## COUNT VIII

## UNLAWFUL DISCRIMINATION IN VIOLATION OF § 4 OF ADEA

123.    Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 122 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

124.    Plaintiff, date of birth, August 29, 1957, is over 40 years of age and is a person protected by the ADEA.  Ms. Fleming is substantially younger than Plaintiff.

125.    Between November 2015 and March 3, 2017, Ms. Fleming took a series of discriminatory adverse actions toward Plaintiff because of her age, including, but not limited to, denying her requests for reasonable accommodation, subjecting her to a hostile work environment because of her age, imposing unreasonable and unachievable performance standards, counseling her for non-existent performance problems, denying her a within-grade increase, issuing her an "unsuccessful" performance appraisal and placing her on a performance improvement plan.

126.    Plaintiff suffered the unlawful adverse actions described above.

127.    Plaintiff's age was the determining factor in the adverse actions described above.

128.    The explanations offered by Defendant for its actions are pretextual.

129.    Defendant's actions were unlawful in violation of § 4 of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623.

130.    As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

## COUNT IX

## UNLAWFUL RETALIATION IN VIOLATION OF § 4(d) OF ADEA

131.    Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 130 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

132.    Plaintiff began engaging in protected activities under the ADEA beginning on October 21, 2015, when she initially opposed unlawful employment practices by filing her internal complaint of harassment under Defendant's anti-harassment policy.   In November 2015, Plaintiff submitted her first Request for Reasonable Accommodation form.  Plaintiff continued those protected activities in December 2015, when she initiated her informal complaint by contacting an EEO counselor and, in March 2016, when Plaintiff filed her formal administrative complaint of discrimination.  That complaint of discrimination was amended in Spring 2017.   In November 2016, Plaintiff filed her second Request for Reasonable Accommodation form.

133.    Plaintiff has suffered retaliation including, but not limited to, denying her requests for reasonable accommodation, subjecting her to a hostile work environment because of her race/color, imposing unreasonable and unachievable performance standards, counseling her for non-existent performance problems, denying her a within-grade increase, issuing her an "unsuccessful" performance appraisal and placing her on a performance improvement plan.

134.    Defendant has taken materially adverse actions against Plaintiff for her engaging in protected activities, including opposing unlawful employment practices and participating in protected EEO activities.  Such actions would dissuade a reasonable worker from opposing such practices.

135.    There is a strong causal connection between Plaintiff's activities protected under the ADEA and the materially adverse actions taken against her.

136.    But-for Plaintiff's protected activities, Defendant would not have taken the adverse actions described above.

137.    Defendant's explanations for its actions are pretextual.

138.    Defendant retaliated against Plaintiff in violation of § 4(d) of the ADEA, 29 U.S.C. § 623(d).

139.    As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

## COUNT X

## UNLAWFUL HOSTILE WORK ENVIRONMENT IN VIOLATION OF ADEA

140.    Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 139 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

141.    After Plaintiff opposed unlawful employment practices, beginning in October 2015, Ms. Fleming and Mr. Condes began and continued unabated a pattern of unwelcome harassment, intimidation and ridicule directed at Plaintiff because of her having opposed unlawful employment practices under the ADEA and for participating in protected EEO activities.

142.    Such harassment, intimidation and ridicule created a workplace that was permeated with retaliatory intimidation, ridicule and insult that was sufficiently severe and pervasive to alter Plaintiff's conditions of employment and created an abusive retaliatory working environment.

143. Ms. Fleming's and Mr. Condes' retaliatory conduct unreasonably interfered with Plaintiff's work performance. Their actions were both objectively and subjectively offensive, such that a reasonable person, as well as Plaintiff, would perceive to be so.

144. Defendant's actions affected the terms, conditions and privileges of Plaintiff's employment.

145. Defendant knew or should have known of Ms. Fleming's and Mr. Condes' actions and failed to act to prevent or remediate their unlawful retaliatory harassment.

146. As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

## COUNT XI

## CONSTRUCTIVE DISCHARGE

147. Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 146 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

148. Ms. Fleming's abusive and endemic discriminatory and retaliatory conduct and harassment continued unabated and unremediated from November 2015 and February 2017. Such conduct directly and catastrophically adversely affected Plaintiff's health and her ability to perform her job.

149. In February 2017, Plaintiff no longer could tolerate the abusive discriminatory, retaliatory and harassing conduct and the abusive workplace in the RDM. Her efforts to move away from Ms. Fleming's organization repeatedly were ignored by Defendant.

150. In February 2017, Plaintiff retired and also relinquished her OPM classification appeal. Those decisions were not voluntary. The discriminatory and retaliatory conduct and

harassment suffered by Plaintiff was so intolerable that a reasonable person would have been compelled to resign.  Ms. Fleming's actions left Plaintiff with no reasonable alternative to involuntary retirement since continuing to work in RDM would have required Plaintiff to work indefinitely in intolerable working conditions that were already negatively affecting her health and job performance.

151.   Defendant intentionally and unlawfully discriminated and retaliated against Plaintiff and intentionally and unlawfully interposed a hostile and offensive work environment against Plaintiff.

152.   Ms. Fleming deliberately made Plaintiff's working conditions intolerable.

153.   Plaintiff was constructively discharged from her position with NASA.

154.   As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Honorable Court grant her the following relief, namely:

(i)  That this Court determines that the employment practices complained of in this Complaint are unlawful in that they violate the VRA, Title VII and the ADEA.

(ii) That Defendant pays Plaintiff a sum in excess of $300,000 for compensatory damages.

(iii)That Defendant pays Plaintiff's costs and expenses and reasonable attorney's fees as provided under federal laws in connection with this action.

(iv)That this Court grants other and such further relief to the Plaintiff as it deems just and proper.

DATED:  August 25, 2017.

Nathaniel D. Johnson (MD Bar #14729)
Attorney for Plaintiff
The Johnson Law Firm
10665 Stanhaven Place, Suite 3101
White Plains, MD 20695
301 645-9103/888 492-9434 (fax)
ndjesquire@gmail.com